November term of court, sitting today with Judge Cimicero, Judge Matheson. We've got Utah and Colorado well covered today. All right, looks like counsel are ready. Our first case is 17-3223, United States v. Ash. Chief Judge Timkovich, and may it please the court, my name is Dan Hansmeier. I'm an attorney with the Federal Public Defender in the District of Kansas, and I represent the appellant in the Cross Appellee, Dustin Ash. So there are two issues in this appeal, both involving crime of violence, issues underneath the guidelines, Kansas reckless aggravated battery and Missouri second-degree robbery. We won the robbery offense in the district court. The government won the recklessness offense in the district court. So I think I'm going to start with the robbery offense, go from there. And so the Missouri robbery statute has an element of force. It's something the jury must find in order to convict. The question in this appeal is whether that force element is violent force. Where do you think the Eighth Circuit went off the rails? They looked at it recently, too, and found that it was a categorical use of force statute. Right. So I think there are three problems, main problems with the Eighth Circuit's decision. The first is that it takes what we think is the general rule in Missouri and says that it's dicta. So there's a long line of cases from the Missouri Court of Appeals that says where there was no physical contact, no struggle and no injury, there's insufficient evidence of a robbery. And we think that means that if there are one of those three things, then there can be a robbery. And the Eighth Circuit says that was dicta. And we don't think that's true. We think that's the general rule that applies in Missouri. What's the strongest Missouri state court case that you would rely on then? So if you're looking for the facts of the case, so there are a number of cases that cite this general rule. And that's one thing the Eighth Circuit says. They sort of say that only one case says this, but that's not true. A number of cases say that. But as far as the facts of a Missouri case, Lewis, I think, is the case. Lewis. Yes. And that, so this gets kind of blurry, right? So Lewis, really what we're saying under Missouri law is there's a way in which you can commit robbery if there's a struggle, if there's injury, or if there's more than de minimis physical contact. We think that's what the rule is. The question in this case is essentially a line drawing as to what de minimis is. And that's a really hard line to draw. But we think in Missouri that line has been drawn on the side that comes on one side of how this court defined violent force in Garcia. Because in Garcia, this court said, let me just get the language here. Well, you look at your language. What documents do you, or what evidence do you review to make that determination? Right. So the way the law is right now, it's not, you would think that maybe the rule should be, well, if we need violent force, then we ask whether the jury was instructed to find violent force. That would make sense to me, but that's not what we do. We have to re-litigate the case? Right. So the fact, so if you're talking about the underlying facts of our case? No. Okay. To determine whether these components are present. Right. You were talking to Judge Tinkovich about. Right. So I think what we would, what we think makes sense is that you just look at the general rule from the courts and determine how that applies in this case. Now, I think that sort of the way in which this is done normally is that you look at the underlying facts of whatever cases you can find from the courts. And that's a frustrating rule because there are so many more Missouri robberies that don't make it into the federal reporters. So you're looking at a very small set of robberies and you're trying to determine what, you know, what constitutes robbery and what doesn't. So it's very frustrating. But we think there's enough in this case to show that Missouri robbery does not meet the violent force component. And that is essentially because in Garcia, this court said bumping, nudging, or jostling the victim in order to obtain a purse is not sufficient violent force. And we think when you look at the facts of Lewis, that's essentially what you have. So if you look at how this court has drawn the line between nonviolent and violent force and you look at the Missouri cases, when you look at the facts of Lewis, and especially when you look at the general rule in Missouri where it says, you know, no injury, no struggle, no physical contact. The enumerated offense clause doesn't work for the same reason. I suspect that's your argument. That is our argument, yes. And we think, you know, the government comes back and replies and says, well, we don't think there's a quantum of force requirement. But they don't cite anything for that. And I think, you know, we're relying on, I think there's support from this court's decisions and O'Connor and a few others. But you have a Fifth Circuit case, Ninth Circuit case, Fourth Circuit case, I think. So there, and when you look at the robbery statutes, you know, we think that's true. And I think to some extent we're going to get that in Stokeling, too. I think Stokeling's going to help out a little bit. Do you think Stokeling's going to bear on this case? I think it probably will. I mean, I don't know how it won't bear on it to some extent. Whether it's dispositive or not, I don't know, but. What do we have to gain as a panel? Yeah. By deciding anything in this case. Yeah. Until the Supreme Court speaks. I mean, is there anything to be gained by an interim opinion from us? Probably not. I mean, I think it would be smart to wait to see. Probably what's better, an informal abatement or a formal abatement? No, I don't think it matters. I don't think you have to do it formally. I guess you could, but. I think that makes sense to see what the Supreme Court says in Stokeling. Because that case does involve a statute that's very similar. And I can tell you that I mooted this case in front of some Missouri, Kansas City, Missouri, FPDs who have these swillips cases. And all those cases are being held, the cert petitions, in light of Stokeling. And the Solicitor General has agreed to that. So there is an understanding, at least in Missouri, that this issue will be resolved by Stokeling. I mean, I don't know if I would go that far, but. Was Swillips being appealed? Yeah, it's up there. They didn't deny cert in it yet, did they? No. I mean, my understanding is that they filed the cert petition and the Solicitor General filed a brief in opposition saying, hold this pending Stokeling. Let me just ask on the enumeration clause issue. To what extent do the parties agree on the generic definition of robbery? Right. And what is the generic definition of robbery? Well, I thought we actually agreed based on the briefing below. I thought it was pretty clear that it was a taking by force from another person. Pretty simple stuff that requires a cert. Where would you cite for the generic definition? Right. So you would think that this would be easier to find this. But we had a really hard time finding cases that talk about what generic robbery means. I mean, whatever is in our brief is what we found. Obviously, from this court, there's some stuff in O'Connor and the cases that are cited in O'Connor. And, you know, we talk about Lefebvre and the model penal code. I can, you know, it's in the brief. That's my best answer. Let me, I want to make sure I understand the differences between you and the government on the methodology for the enumeration clause analysis. If I'm understanding your argument, the analysis for the enumeration and the elements clauses is pretty much the same. Right. Is that fair? Yes. And, of course, we'll hear from Mr. Brown. But I understand the government's position is it's more of a matter of taking the generic definition of robbery and laying it alongside the statute. And that's it. You don't really do much more than that. You don't start getting into the details of the Missouri Court of Appeals. You just take, you know, what's the definition of forcibly steals? And if that matches up, then it fits. Is that? I think that's right. I don't think there's any. So I think maybe the way I would explain is that we're saying that the element of force in generic robbery is more than de minimis. And I thought the government was saying that, but it seems like in the government's reply they have backtracked and said, as long as there's any element of force, it can be simple force, and that's robbery. So I think that's the debate, whether generic robbery has an element of simple force or an element of, you know, more than simple force. And I didn't see a case site in the government's brief to support the idea that robbery can be committed by simple force. I just don't think that's true. I think the cases we cite say the opposite. And I really think that's what you see in Stokeling, that there's a debate about whether this rises to the level of force. I think that is just going to be sort of consumed with the idea of what is generic robbery. So, yeah, I mean, at the end of the day, we think that generic robbery requires more than minimum force, and that's the same, you get into the same arguments that you get into with Johnson violent force issue, if that helps. I talked maybe for a few minutes about the recklessness. I know that the cases are coming down on this and we're losing everything in this circuit, but I think as far as stare decisis goes, we haven't lost the guidelines issue, and we've won it. You know, Duran says reckless crimes don't count under the guidelines. I think we made a really good argument as to why you can't overrule that as a panel. I know it's tough because there are other cases saying reckless crimes count in analogous situations, but at the end of the day, when you look, especially the case we're citing, Green Solution Retail, it basically says that if the Supreme Court reserves an issue, it's not, it doesn't overrule prior precedent, and that's exactly what happened here. In Voisin, Voisin said we're not deciding whether crimes of violence, this isn't a crime of violence issue, and that reservation, we think, makes it crystal clear that a panel of this court cannot overrule DeBriant, and we think it's that simple. I do understand that, you know, Pam is out there, and I have this new case, Mann, and it's really hard to reconcile all of this stuff. I mean, I really wish this Court would take the issue in bonk. I think that would be because then you don't have to worry about overruling, you just consider it. That would be a nice, clean way of doing it, and if the majority of the Court wants to say something different than Duran, you could, but I do think we're right on the stare decisis issue, and I think that's clear from the precedent. I think we're right on the merits. Could I just ask, because we've got Voisin, and that concerned a particular statute, but then we have, in this circuit, Hammonds and Pam, and they weren't dealing, obviously, with the same statute. They were dealing with the ACCA, and so the panels in those cases didn't seem to feel restrained from extending the Voisin analysis, and if that's the case, then are we really looking at the fact that we're dealing with a guideline here as opposed to the statute, and therefore that should give us some pause, or given the analysis where this Court has extended Voisin, why wouldn't the logical end point be that it extends to the guideline here? I mean, it might be logical, but, again, we don't think it's proper under precedent. I will say, if you want to get into the guidelines, I think — I guess it depends on what you say the precedent is, though. I mean, because the analysis is, in a way, precedent, isn't it? Well, I'm talking about when you look at stare decisis and how you need an intervening Supreme Court decision. So Pam is not an intervening Supreme Court decision. So Pam can't overrule Duran. So if you look at it in terms of stare decisis, the only question is whether Voisin overrules Duran, and that's a no because Voisin expressly reserves the issue. Now, Voisin shouldn't have overruled Pam either, and I see what you're saying, and that's why this is difficult. If you want to get into sort of distinguishing the guidelines from everything else, you know, we've made the argument that when you look at the guidelines, you have provisions that are — and some of this applies to the statute, so maybe this isn't a great distinction, but when you look at the first clause, you have attempted use, threatened use. Attempts, specific intent. Threat, specific intent. There's no reason to say use is something less than intent. That's a weird statutory argument. Then when you go broader and look at the enumerated offenses, those offenses are purposeful crimes. We know that from what the Supreme Court said in Begay. When you go to the residual clause, when it existed, the Supreme Court said those had to be purposeful crimes. So when you take the entire statute as a whole, essentially what the courts are doing is carving out this use thing and saying a lower mens rea can apply there, but nowhere else. And as a matter of statutory interpretation, we think that's wrong. Then with the guidelines, if you look to the commentary, it includes aiding and abetting, conspiracy attempts. All of those have to include intent. So when you read everything and put it all together, it is just crystal clear to us that there's no reason to carve out this use element and say that's the only thing out of these ten different things that can be committed recklessly and count, and I'll reserve the remainder of time. Thank you, Counsel. Let's hear from the government. Good morning, Your Honors. James Brown, Appears for the United States. Your Honors, I'd like to start with the Kansas reckless aggravated battery statute issue, which is the issue that we went on below and the defendant is appealing today. We believe that the district court correctly decided the issue. The case really comes down to the definition of the word use in the statute, 4B1.2a1. What does a use, in quotes, of physical force consist of? In Wazin, the Supreme Court said that the word use includes reckless conduct. The word use includes reckless conduct. That goes contrary to the rationale, the shared rationale of Zaniga Soto, Armijo, and Duran, where this court said that the word use excludes reckless conduct on the basis of leocal. And the reason that the court made that finding on the basis of leocal is that leocal said that the word use excludes accidental and negligent conduct. And in Zaniga Soto, Armijo, and Duran, this court said that recklessness is a species of accidental conduct. But Wazin cleared that up. And Wazin said that use includes reckless conduct. In making that clarification, we believe that Wazin has stated law or clarified the law in a manner contrary to Zaniga Soto, Armijo, and Duran, and is thereby, and that reasoning is contrary to those cases and invalidates the reasoning of those cases. And for that reason, under Brooks and White, this court, not an en banc panel, but this court, has the power to jettison altogether and find superseded and abrogated Zaniga Soto, Armijo, and Duran. They have been abrogated and superseded by Wazin. On that basis, the district court permissively relied on Wazin to find that the Kansas reckless aggravated battery statute qualifies as a crime of violence under 4B1.2a1 because it requires a use of force, and a use of force can include reckless conduct. Could I just ask how you respond to an argument that Mr. Ash made in his brief, and that is that footnote four in Wazin reserved the issue that was decided in Zaniga Soto and Duran. I assume you disagree with that, but could you speak to that argument? Well, it, it, it, we think the reasoning, the fact that it reserved a question, a question on an issue that Excuse me. What did you say? The fact what? The fact that it reserved a question on an issue that was not before it, we don't think dictates the analysis today. We think that the Court made crystal clear its definition of the word use, that the word, it went on to specify four bases for reasoning that the word use includes reckless conduct, and each of these bases of reasoning apply equally to the Kansas aggravated battery statute with reckless intent. The Wazin court said that the word use means the act of employing something, that the word use is indifferent to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of the conduct. The Court said that the word use excludes accidental conduct, but the word use does not exclude reckless behavior. So the fact that the Wazin court may have reserved ruling on an issue that was not before it, we don't find that to be consequential, legally or otherwise. We think it's just out there and doesn't really mean anything for our purposes today. On that basis, we would, we would also point the Court to the fact that this Court has basically jettisoned the rationale of Zuniga-Soto and Armijo and Duran. It jettisoned that rationale in Hammons, in Pam, in the Mann case, and those were statutory cases where the Court found that, that the reasoning of those cases did not control for ACCA or 924C3A. But the Court also applied the reason that they didn't, they didn't overrule prior panel. They did not overrule it. They could have, but they didn't. They didn't overrule it, but they did say very pointed things about the reasoning of those cases and explicitly declined to follow them. Their, their, their rationale did not occur in a vacuum. The rationale talked about those cases and said we're not going to follow those cases. So, no, it didn't overrule them, but the Court did not rely on the reasoning of Zuniga-Soto, Armijo and Duran. That, that is for certain. Now, we also think it's important that this Court has also applied the reasoning of Wazin in a guidelines context. Well, before you leave Pam, could you speak to the fact that in Pam we were dealing with language that stated willfully and with reckless disregard. Why doesn't that set Pam apart? The willful and reckless disregard? Because it goes back to the word use. The word use includes willful conduct and it includes reckless conduct. It includes both. There's no way to distinguish them. The, the main insight of Wazin is that the use of force connotes active employment, which connotes volitional conduct. Willful conduct is volitional, and as Wazin explained, reckless conduct is also volitional. So we don't need to see that that is a distinction with a difference or a reason not to follow Pam. Now, if I may get to the guidelines application that this Court made of Wazin's rationale, and that occurred in Saraceno, which is a case that we cite. It is an unpublished case. It, it dealt with an older version of 4B1.2A1, I think a 1995 version, that is materially similar in all respects. And in Saraceno, this Court applied Wazin's rationale to a guideline that was basically identical to the guideline that we have today. That, that was an unpublished decision, but we think that its reasoning is persuasive. And we think it's persuasive because this Court has already followed that reasoning in four cases in the statutory context. Pam, Hammons, and, and Mann, three cases, excuse me. We'd also point out that other circuits, the Fifth Circuit and the Sixth Circuit, have applied Wazin's reasoning to 4B1.2A1. That would be the Verweebe case from the Fifth Circuit, I believe, from the Sixth Circuit. And the Howell case from the Fifth Circuit. So if this Court were to jettison Zuniga, Soto, Duran, and Armijo altogether, it would be on solid ground, and it would bring, it would bring its jurisprudence in, in consistency and in uniformity and clarity, which is what we don't have now, because we have this dangling issue about what do we do with Wazin. The Court has already said what we do with Wazin. We follow Wazin. And if this, that's what the district court did here, that's what we're asking this Court to do today. Now, the defendant brings up Duran and says that Duran controls, and I'll just talk about this point for a minute, because it's sort of the, the main point that he makes in his brief, that Duran controls. Duran has been superseded by Wazin. It's as simple as that. It's been superseded and abrogated. Wazin is, the rationale and reasoning of Wazin is contrary to and invalidates the reasoning of Duran. It's been superseded. It needs to go away. It's no longer good law, basically. And this Court doesn't even follow it. That's why this Court needs to bring its jurisprudence into consistency and uniformity. And that's what, that's all we're asking the Court to do today. If there are no further questions on that issue, I'll move to the second, to R. Cross Appeal, which is Cross Appeal of the Missouri Second Degree Robbery Case. Okay. Today we're asking this Court to follow the rule and rationale of the Swopes case, which the Eighth Circuit decided, and decided that Missouri second degree robbery was a crime of violence under 4B1.2a1. The Swopes case overruled the Bell case, upon which the defendant relies today for the majority of his arguments and the majority of his reasoning. We think that it's basically just as simple as the Court looking at the rule and rationale of Swopes, and saying this makes sense, and following Swopes, and stating we're not going to follow Bell. If the Court follows Bell, it's taking a position that's contrary to the current position of the Eighth Circuit. Now, Judge Matheson has asked whether Stoeckling has any impact on, on this case, and whether it has any impact on, potentially any impact on Swopes' reasoning and rationale. We agree with, I agree with my colleague that it does. In Stoeckling, the issue before the Court is whether a common law robbery statute that involves overcoming resistance has a degree of force under, meets the Johnson standard for the degree of force required. And we think that Stoeckling does have some bearing on that issue. So it has some bearing on the continuing vitality of Swopes. So the Court can keep that in mind. If the Court wants to wait until Stoeckling has decided to decide this issue, we think that would be a prudent thing to do. Not necessary, but it would be very prudent. We think the Court's going to come to the right decision whether it waits or whether it doesn't. But putting that aside, we do think that the defendant also, the fact that he relies on the Lewis case, that we find that very interesting. Because the Lewis case involved, that's a case where the Missouri Court found that it involved, it involved enough force to constitute robbery. And that case, the facts of the case, involved a bump, a grab, a yank, and a struggle. So if you take any one of those things, any one of those little actions, any one of those actions, we argue, is capable of causing pain or physical injury to another person. And that meets Johnson's definition of violent force. We have a bump, a grab, a yank, and a struggle. There's no way to get around it. It's in the case. And those four things occurred. That's why the defendant cannot rely on Lewis to support the claim that a Missouri court has found a conviction for robbery where the conduct does not meet Johnson's violent force definition. Lewis squarely meets Johnson's violent force definition. We'd also point out that the Swoap's Court looked at three things in deciding that the statute, the Missouri Second Degree Robbery Statute, has an element of violent force under Johnson's fourth standard. The text of the statute, number one, requires that the offender forcibly steal and use enough force to overcome resistance or compel delivery of the property. Number two, the Swoap's Court found that a review of Missouri State court decisions show that physical force under the Missouri statute is the equivalent of physical force within the meaning of the ACCA, which is saying within the meaning of Johnson. And we think that that analysis is true. My colleagues, the case my colleague cites, in contrary to that is the Lewis case. Lewis, again, involved a bump, a grab, a yank, and a struggle. Has anybody certified that question to the Missouri Supreme Court? Not to my knowledge, Your Honor. Not to my knowledge. The other important point, and we think it's probably the most important point of the rationale of Swoap's, is Swoap's' assessment that no realistic probability exists. And, of course, they're talking about the Moncrief standard. The Missouri courts would apply the Missouri statute to conduct that does not involve force that is capable of causing physical pain or injury to another. It's the realistic probability test of Moncrief, not a theoretical possibility. At most, we think the defendant raises a theoretical possibility that the statute could be applied to conduct not involving violent force under Johnson's standard, but it's never happened. Well, who has the burden on that? I'm sorry? Who has the burden on that? Well, we think the – well, the government had the burden below, and, of course, the defendant has the burden to show that the district court's facts findings were clearly erroneous or the district court made an error of law. And we're basically stating the district court did not make an error of law. Well, we're saying the district court didn't make an error of law because it followed Bell, and then after the district court ruled, the Eighth Circuit followed Swoap's. But we did – Let me ask you this. As I asked opposing counsel, do we have anything to gain as a panel by weighing in on these issues before the Supreme Court rules? Probably not, Your Honor. Probably not. We think that the Court can wait and see what the Supreme Court does and then align its decision with what the Supreme Court says, and this Court would be in good standing if it did so. Right. Could I just ask – and I asked Mr. Hansmeier the same question. This has to do with the enumeration clause analysis. I'm detecting a different approach from both sides on this, and it seems as if once we get to generic robbery, comparing with the Missouri statute, that as far as you're into the intricacies of the Missouri cases interpreting the elements of that statute, you just look at the statute. Now, am I getting your argument right, or how do you go about – how do you think that this Court should go about analyzing the enumeration clause issue? Your Honor, we think that – we just follow Taylor's analysis. We say you look at the generic definition of the crime. We put out the generic definition of the crime. That's a distillation of about ten cases from this Court and other courts. It's not been clearly defined, but it's been defined enough by other circuits. So you take the generic definition, take the elements of the generic definition, compare those elements to the Missouri definition. If they substantially correspond, it matches the generic crime. Well, okay. Okay. So you've got to the point where, for my question, when you get to the elements of the Missouri statute, to determine what those elements mean, do you consult the Missouri cases? No. It's an element-centric approach. That's what Taylor says. You just look at the elements and you see if they substantially correspond. Here we put out the elements. They substantially correspond. What my colleague does is he introduces a new quantum of force element into the Missouri definition, and it's just not there. There's definitions. There's not a quantum of force definition that says more than a minimum of force. We know the statute says it has to be enough force to overcome resistance, but you just line up the elements and compare them. That's Taylor's approach. We don't need any more innovations in the law. We have the law. We just need to apply it. I say that my time is up. If the panel has no further questions, I'll retire. Thank you, counsel. You had a little bit of rebuttal time, Mr. Hansmeier. I'm just trying to make three quick points on the force class. If the government just said there's no quantum of force to commit Missouri robbery, then we win. The government needs a certain quantum of force to win the first issue, because if there is no quantum of force, it's not a vital felony. So I don't know if he meant to say that, but I don't think he did. On Bell, this Court wrote an unpublished decision, Nicholas, Judge O'Sullivan, you authored it. You found Bell persuasive. Bell is contrary to swopes, so there is a precedent from this Court that would allow this Court to disagree with swopes. And finally, the government has the burden of proof. It's one of certainty. It doesn't matter if this is on appeal. The government carries the burden on appeal. The government is trying to shift the burden with the reasonable probability test, and that shouldn't be allowed. Thank you. Thank you, counsel. Appreciate the arguments. That was helpful. Counsel are excused.